UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ANISSA G. ALLEN                                              CIVIL ACTION

v.                                                           NO. 12-1619

ST. JAMES PARISH HOSPITAL                                    SECTION "F"

ORDER AND REASONS

Before the Court is St. James Parish Hospital's motion for summary judgment. For the reasons that follow, the motion is GRANTED.

**Background**

This litigation arises out of claims of race and disability-based employment discrimination asserted by an African-American housekeeper for a hospital, who was indisputably fired for confronting and threatening an African-American co-worker on hospital premises.

Anissa G. Allen worked for St. James Parish Hospital as an at-will employee for approximately 19 years before she fired.[1] During

---

[1] This factual summary is drawn from St. James Parish Hospital's Statement of Uncontested Facts, which cites to materials in the summary judgment record. The plaintiff has failed to submit any statement of material facts which she contends presents a genuine issue for trial. Pursuant to this Court's Local Rules:

> Any opposition to a motion for summary judgment must include a separate and concise statement of the material facts which the

1

the course of her employment, she worked primarily for the hospital's housekeeping department.  As a housekeeper, Ms. Allen was responsible for following established cleaning methods in assigned areas, adhering to work schedules, cleaning and sanitizing, and maintaining a working relationship with co-workers and hospital staff.  Ms. Allen was trained on the hospital's standards of performance for employees, disciplinary system, and anti-discrimination policies.  Among the performance standards expected by hospital employees, the hospital's human resources policy and procedures provides that the hospital "will not tolerate any offensive, intimidating, or hostile conduct [including "threatening or profane language toward others"] that may interfere with the performance of an employee's job or endanger the safety and well-being of anyone while on St. James Parish Hospital's premises."

Malinda Rein, the hospital's housekeeping manager, supervised Ms. Allen during the majority of her time working at the hospital.

---

        opponent contends present a genuine issue. All
        material facts in the moving party's statement
        will be deemed admitted, for purposes of the
        motion, unless controverted in the opponent's
        statement.
See Local Rule 56.2; see also Danos v. Union Carbide Corp., --- Fed.Appx. ---, 2013 WL 5587226, at *2 (5th Cir. Oct. 11, 2013)(per curiam) ("If a party fails to oppose a motion for summary judgment, then the district court is permitted to consider the facts listed in support of the motion as undisputed and grant summary judgment if those facts would entitle the movant to judgment as a matter of law.")(citations omitted).

Ms. Allen received positive, neutral, and negative evaluations during her tenure with the hospital.  She consistently received negative evaluations for poor cleaning or failure to clean as directed, failing to follow assigned work schedules, excessive absences and tardiness, excessive personal phone calls during work hours, poor time management, excessive socializing during work hours, and lack of respect for co-workers, supervisors, and hospital staff.  Ms. Allen does not dispute the accuracy of the negative evaluations she received; she signed all evaluations except one, not because it was inaccurate, but because "it was not a good evaluation."[2]

Ms. Allen received more than 30 write-ups and counseling for violating hospital work policies and standards of performance.  She was consistently written up for violations such as private phone calls during work hours, failure to clean assigned areas, excessive absences and tardiness, and improper clocking in and out.

The year before she was fired, Ms. Allen received eight write-ups and counseling sessions:

- on March 5, 2010 Ms. Allen was issued an employee counseling record for failing to clean the emergency room lobby by 9 a.m.
- on July 21, 2010 Ms. Allen received an employee counseling record for failing and refusing to properly clean the emergency room and report to her supervisor after completion even though she had been asked to do so three times that day.

---

[2] Ms. Allen justifies certain negative evaluations, contending that some of her absences and tardiness were due to illness and that in general Ms. Rein was never satisfied with her work.

  Ms. Allen was issued a "day of decision making" with pay; in response, Ms. Allen wrote a letter stating that she would return to work, do her "job the best of [her] ability," "obey [her] supervisor," and "stay strong to control [her] mouth."
- on November 16, 2010 Ms. Allen was issued an employee counseling record as a result of a report that on November 7, 2010 Ms. Allen was watching television in the outpatient surgery area during work hours.
- on November 16, 2010 Ms. Allen was issued a second employee counseling record after a doctor reported that the emergency room doctor's lounge was not being cleaned when she was responsible for cleaning that area.
- on December 13, 2010 Ms. Allen was issued an employee counseling record after registered nurse Kevin Raul reported that (1) Ms. Allen was not using the wet floor sign while mopping, and a hospital employee almost slipped and fell on the wet floors; and (2) after RN Raul requested Ms. Allen empty the garbage cans at the nurses' station, Ms. Allen accused RN Raul of harassment and acting unprofessionally.
- on February 20, 2011 Ms. Allen was written-up and counseled by RN Andrea Wilson after it was reported to RN Wilson that Ms. Allen failed to respond for 45 minutes after she was paged over the intercom to report to her assigned area.  Hospital security officer, Lubelia Kelson, who is African-American, reported to RN Wilson that she observed Ms. Allen returning to the hospital in her vehicle during the time of the intercom page, and RN Wilson included Ms. Kelson's statement in the write-up.  Ms. Kelson also reported to RN Wilson that Ms. Allen threatened her after Ms. Kelson reported that she had left the hospital, and the write-up contains Ms. Kelson's claim that Ms. Allen told her "If I get reported, it ain't gonna be nothing nice."  Ms. Allen was not in the hospital when she was paged because she went to get something out of her car.  Ms. Allen confronted Ms. Kelson and spoke to her "with a slightly vigor tone of voice."
- on February 28, 2011 RN Wilson sent an email to Ms. Rein reporting that she was notified by "Hawk", a co-employee of Ms. Allen's who is also African-American, that Ms. Allen and Rudolph Carter, another housekeeping employee, were in the housekeeping department socializing for three hours during Ms. Allen's work shift.  Ms. Allen does not dispute that she was socializing with Mr. Carter during her work shift.  RN Wilson observed that the acute care area was dirty, a housekeeping cart had been left unattended, and RN Wilson was not able to find Ms. Allen for 45 minutes.
- on March 10, 2011 Ms. Allen was issued her final employee counsel record.  The March 10, 2011 counseling record provided three bases for Ms. Allen's termination: (1) Ms. Allen was

4

given a written notice on December 13, 2010 for failing to treat co-workers with respect and failing to maintain a positive attitude; (2) on February 20, 2011 Ms. Allen confronted RN Wilson and threatened Ms. Kelson; and (3); on March 10, 2011 at 6:15 a.m., Ms. Allen verbally threatened and used profane language on hospital premises.

On May 25, 2011 Ms. Allen filed a charge with the Equal Employment Opportunity Commission, alleging race discrimination in violation of Title VII and disability discrimination in violation of the Americans with Disabilities Act. On June 22, 2012 Ms. Allen sued St. James Parish Hospital, alleging race and disability discrimination. In her complaint, Ms. Allen alleges that she was fired for not responding to a page over the intercom on March 10, 2011 and that she wears a hearing aid in her left ear; she also alleges "other [unspecified] acts of discrimination." A scheduling order was issued: a pretrial conference is scheduled for November 21, 2013 and a jury trial is scheduled for December 16, 2013. After her attorneys withdrew from representing Ms. Allen, she notified the Court that she would represent herself. On August 2, 2013 the magistrate judge scheduled a settlement conference for November 4, 2013. However, the plaintiff failed to appear for the conference.[3]

---

[3]The magistrate judge issued a minute entry stating:

> Despite notice of the conference having been duly mailed to plaintiff..., she failed to appear for the conference as ordered. Accordingly, a Report and Recommendation will be issued recommending that plaintiff's lawsuit be dismissed for failure to prosecute

St. James Parish Hospital now seeks summary relief.

I.

A.

Local Rule 7.5 of the Eastern District of Louisiana requires that memoranda in opposition to a motion be filed eight days prior to the noticed submission date. The plaintiff, pro se, apparently filed her opposition papers on November 6, 2013, but for some unexplained reason the Clerk's Office did not docket the opposition until November 12, 2013. Because the plaintiff submitted her opposition paper only one day late, the Court will consider the arguments Ms. Allen raises. However, the Court notes that she has failed to submit a statement of contested facts and likewise has failed to submit any competent summary judgment evidence in support of the arguments she advances in her opposition paper.

This Court has previously observed:

> Although the Fifth Circuit U.S. Court of Appeals forbids a district court from granting summary judgment merely because the motion is unopposed (even if the failure to oppose violated a local rule), if the Court's independent review of the record reveals that there are no genuine disputes as to any material facts, granting summary judgment is certainly appropriate. See Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima, 776 F.2d 1277, 1279 (5th Cir. 1985)("The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless of whether any response was filed."); John v. La. Bd. of Trs. for State Colls. & Univs., 757 F.2d 698, 709 (5th Cir. 1985); see also Fed.

---

and for failure to comply with the Court's order.
See Minute Entry dated 11/4/13.

>R. Civ. P. 56(e)("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it.").

See Danos v. Union Carbide Corp., No. 11-2491, 2012 WL 5877951, at *2 (E.D. La. Nov. 20, 2012)(Feldman, J.), *aff'd by*, --- Fed.Appx. ---, 2013 WL 5587226 (5th Cir. Oct. 11, 2013)(per curiam); see also Luera v. Kleberg Cnty., Tex., No. 11-40774, 2012 WL 490407 (5th Cir. Feb. 15, 2012).[4]

*B.*

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of

---

[4]In Luera, an unpublished opinion, the Fifth Circuit noted:
>We have approached the automatic grant of a dispositive motion, such as a grant of summary judgment based solely on a litigant's failure to respond, with considerable aversion . . . . In this case, however, the record makes clear that the district court dismissed the suit based on its merits and not as a sanction.

Id. at *1-2 (noting that the plaintiff did not respond to the defendant's motion for summary judgment, that the district court treated the motion as unopposed, and that the district court then proceeded to analyze the merits in granting the motion).

fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed.R.Civ.P. 56(c)(2). Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

## II.

The defendant submits that there is no genuine issue of

material fact in dispute and that the plaintiff's claims for racial discrimination in violation of Title VII and for disability discrimination in violation of the Americans with Disabilities Act are legally and factually deficient. St. James Parish Hospital contends that it lawfully terminated Ms. Allen after she violated hospital policies by confronting and threatening a co-worker on hospital premises, notably after she received a series of write-ups for poor work performance and for disrespecting co-workers and hospital staff. Because the plaintiff fails to set forth any facts in dispute that demonstrate that she was discriminated based on her race or alleged disability, St. James Hospital contends it is entitled to judgment as a matter of law dismissing her claims with prejudice. The summary judgment record compels this result.

*A.*

The standards applicable to Title VII race discrimination claims are well-settled:

> Title VII makes it unlawful for an employer to fire an employee because of the employer's race. 42 U.S.C. § 2000e-2(a)(1).... We apply the modified McDonnell Douglas [McDonnell Douglas Crop. v. Green, 411 U.S. 792, 802 (1973)] approach in racial discrimination cases under Title VII. Under this approach, [the plaintiff] must first make a prima facie case of racial discrimination.... To make a prima facie case [the plaintiff] must show that (1) she is a member of a protected class, (2) she was qualified [for her work position], (3) she was fired, and (4) she was replaced by someone outside of her protected class.... Then, [if the employee establishes a prima facie case of racial discrimination, the employer] must articulate a legitimate, non-discriminatory reason for firing [the plaintiff, who] must then "offer sufficient evidence to

9

> create a genuine issue of material fact either (1) that [the employer's] reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that [the employer's] reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is [the plaintiff's] protected characteristic (mixed-motives alternative)."

Vaughn v. Woodforest Bank, 665 F.3d 632, 636-37 (5th Cir. 2011)(internal citations omitted).

The hospital contends that the plaintiff cannot establish a prima facie case of racial discrimination because (1) she was not qualified for her position (as shown by the record evidence establishing her negative evaluations); (2) she was not treated less favorably than similarly-situated employees outside of her class (as shown by the record evidence that the plaintiff was fired for confronting and threatening an African-American female; plaintiff identifies no white employee that was treated more favorably);[5] and, (3) the defendant submits, the plaintiff was

---

[5] The hospital points out that never during her 19-year tenure with the hospital did the plaintiff report a single instance of race discrimination; she did not allege race discrimination in her EEOC Charge (she merely checked the box); she admitted in her deposition that she "can't recall" any instances of race discrimination. Indeed, factual allegations supporting a charge of racial discrimination are notably absent from the record. In her opposition paper, Ms. Allen suggests that Malinda Rein mistreated her, called her an "ugly train wreck", offended her, and harassed her. However, she submits no evidence that supports any charge of racial discrimination.
   It is worth noting that the record establishes that, after the plaintiff was fired, she applied for a position with another company in which she stated that she was fired by the hospital for arguing with Ms. Kelson. When she applied for unemployment benefits, her request for benefits states the reason

replaced with another African-American individual.  Finally, the defendant submits that the hospital fired the plaintiff for a legitimate, nondiscriminatory reason (because she admits that she confronted and threatened a co-worker on hospital premises and was counseled on prior occasions for her lack of respect toward co-workers and staff).  The record supports each of the defendant's arguments, entitling the hospital to summary judgment dismissing the plaintiff's Title VII claim.

*B.*

The American with Disabilities Act prohibits discrimination against a qualified individual with a disability on the basis of disability of such individual with regard to employment terms, conditions, and privileges.  42 U.S.C. § 12112(a); <u>Amsel v. Tex. Water Dev. Bd.</u>, 464 Fed.Appx. 395, 399 (5th Cir. 2012).  A "'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds...."  42 U.S.C. § 12111(8).  A disability discrimination claim under the ADA is evaluated under the same <u>McDonnell Douglas</u> burden-shifting framework at the summary judgment stage.  <u>Gowesky v. Singing River Hosp. Sys.</u>, 321 F.3d 503, 511 (5th Cir. 2003).

The defendant again contends, and the record confirms, that

---

for her separation from employment as "arguing on the parking lot of hospital premises."

the plaintiff cannot establish a prima facie case of disability discrimination. First, the defendant submits that the plaintiff is not disabled. While the plaintiff testified that she wears a hearing aid in her left ear, she admits that she can hear out of her right ear. She has not alleged that her hearing issues in her left ear have affected any of her major life activities as defined by the ADA. See 29 C.F.R. § 1630.2(j)(1)-(2); 42 U.S.C. § 12102(2)(A). The record shows that Ms. Allen has graduated from school, married, raised children, cared for herself, and that she has maintained long-term employment despite her alleged disability. Moreover, the plaintiff alleges only that she was unable to hear her name paged over the intercom at the hospital, but she also admits that she was in the parking lot getting something out of her car at the time she was paged; thus, the hearing impairment was not the cause of her failure to hear the intercom page. Furthermore, the plaintiff never requested a reasonable accommodation for her hearing impairment; she wore her hearing aid whenever she chose to do so. Notably, the plaintiff has set forth no facts that indicate that she had any problems communicating with the hospital staff or that anyone at the hospital believed that she was restricted in her ability to perform her housekeeping work compared to housekeeping employees without a hearing impairment. Thus, the defendant submits and this Court agrees that the plaintiff has failed to demonstrate that she is disabled. See Rodriquez v. Alcoa, Inc.,

805 F. Supp. 2d 310, 316-18 (S.D. Tex. 2011)(granting summary judgment in favor of employer where employee with hearing impairment failed to establish that he was disabled within the meaning of the ADA since hearing impairment did not negatively affect his personal or professional activities).  Moreover, the record establishes that the plaintiff was fired for violating hospital policy after she confronted and threatened another employee (and not because she failed to respond to an intercom page).  The defendant is entitled to judgment as a matter of law dismissing her ADA claim.

Accordingly, the defendant's motion for summary judgment is GRANTED.  The plaintiff's lawsuit is hereby dismissed.

New Orleans, Louisiana, November 13, 2013

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE